**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re: ) | |
| ) | |
| HAROLD POTTER, ) | Bankruptcy Case No. 05-44566 EEB |
| CAROLYNE POTTER, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| HARVEY SENDER, Chapter 7 trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. 07-01125 EEB |
| ) | |
| LOVE FUNERAL HOME, ) | |
| ) | |
| Defendant. ) | |

_____

**ORDER**
_____

THIS MATTER comes before the Court following a trial on the Trustee's Complaint, alleging avoidable post-petition transfers under 11 U.S.C. § 549 and seeking to recover those transfers for the estate under 11 U.S.C. §§ 550 and 551. The Court being otherwise advised in the premises, hereby FINDS and CONCLUDES:

**I.    Background**

The Debtors filed a Chapter 7 petition on October 13, 2005.[1]  Plaintiff Harvey Sender is the duly-appointed Chapter 7 trustee of their estate (the "Trustee"). At the time of the bankruptcy filing, the Debtors held several small life insurance policies on the life of Mr. Potter. One of these policies was a Globe Life and Accident Insurance Company ("Globe") policy. Shortly after filing bankruptcy, on November 1, 2005, Mr. Potter died.  Mrs. Potter contracted

---

[1] This case was filed before October 15, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective.  Thus, this case is governed by the law in effect prior to BAPCPA and all statutory references to the Bankruptcy Code are to 11 U.S.C. § § 101-1330 (2004), unless otherwise specified.  All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified as well.

with Love Funeral Home ("Love") to perform his funeral and burial services and to purchase a headstone for his grave. In order to pay Love for its services, Mrs. Potter executed an Assignment of Insurance Policy, assigning a portion of the Globe policy proceeds to Love (the "Assignment"). In due course, Globe issued a check directly to Love in the amount of $8,374. This is the first transfer that the Trustee seeks to recover.

Love also received two checks from Mrs. Potter, each in the amount of $1,378, to purchase the headstone. These checks were drawn on the Debtors' prepetition checking account, which Mrs. Potter continued to use post-petition. The Trustee alleges that the headstone payments were attributable to the proceeds of two life insurance policies, including the Globe policy, both of which were property of the estate. But there were other deposits in the bank account that were not property of the estate, including three post-petition social security checks and other exempt insurance proceeds. Mrs. Potter testified that, in her mind, she used the Globe insurance money to pay for the funeral, burial, and headstone. She could not have afforded to pay for it had she not received this money. But neither party disputes that Mrs. Potter commingled the Globe policy proceeds with other funds that were not property of the estate. Neither party provided any evidence that would allow the Court to trace the source of the headstone payments.

## II.     Discussion

Section 549(a) allows the Trustee to avoid unauthorized post-petition transfers of property of the estate. In order to prevail under this statute, he must prove (1) there has been a transfer of property, (2) from property of the estate, (3) the transfer occurred after the commencement of the case, and (4) the transfer was not authorized under the Code or by the bankruptcy court. *See, e.g., Schieffler v. Coleman (In re Beshears),* 196 B.R. 464, 466 (Bankr. E.D. Ark. 1996); *Geekie v. Watson (In re Watson),* 65 B.R. 9, 11 (Bankr. C.D. Ill. 1986). If he establishes these elements, then §550(a) specifies from whom he may recover. His recovery may be from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." Whether a transferee falls into the first or second camp is significant. Section 550(b)(1) provides defenses to the latter group that are not available to the former. It limits the trustee's recovery rights by prohibiting recovery from immediate or mediate transferees of the initial transferee that take "for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). The good faith exception is available only to an "immediate or mediate transferee." The "initial transferee" and the "entity for whose benefit such transfer was made" are strictly liable, regardless of good faith, value, or lack of knowledge of the voidability of the transfer. *Rupp v. Markgraf*, 95 F.3d 936, 938 (10th Cir. 1996).

### A.     Were the Transfers from Property of the Estate?

The only element of the Trustee's *prima facie* case under § 549 in dispute is whether the property transferred was property of the estate. No one disputes that the payment Love received

directly from Globe represented proceeds from an insurance policy that was property of the estate. But as to the Trustee's claims to recover the value of the two checks in payment of the headstone, the parties dispute whether these checks were in fact drawn on funds that were property of the estate. The money in Mrs. Potter's checking account came from several different sources that were not property of the estate, including exempt property and post-petition income (social security). Since a § 549 claim may only lie if the transferred property was estate property, it was incumbent on the Trustee to demonstrate that the funds drawn by these checks were attributable to the life insurance proceeds that were property of the estate.[2]

In *Burtch v. Hydraquip, Inc. (In re Mushroom Transp. Co., Inc.)*, 227 B.R. 244 (Bankr. E.D. Pa. 1998), the court dealt with a similar issue of a commingled bank account in the context of a trustee's § 549 claims. In that case, the former bankruptcy trustee had embezzled large sums of money from several bankruptcy estates. He then deposited the funds into his personal account, where they were commingled with his other legitimate sources of income. The successor trustee in the Mushroom estate filed § 549 claims against numerous defendants, claiming they were in receipt of approximately $500,000 of the estate's funds. The court held that, in order to establish a § 549 claim, "the plaintiff must trace the proceeds of funds stolen from the consolidated Mushroom estate to the defendants." *Id.* at 252. The commingling of funds did not preclude the claim, but it imposed the burden of tracing. The court discussed common law presumptions typically utilized to satisfy the tracing requirement, such as the "lowest intermediate balance rule." In the absence of this proof, the court dismissed the claims.

Bankruptcy Rule 6001 does not shift the burden of tracing to Love. The rule states, "[a]ny entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." There are two ways to interpret this rule. One way is to view it as shifting the burden to the defendant on all elements of the claim and any defense.

The other possible interpretation is to view it as only shifting the burden as to the "validity" of the transfer, which is in essence an affirmative defense to a trustee's assertion that the transfer was unauthorized. For example, if the trustee in a converted case brought a claim to avoid the debtor-in-possession's grant of a post-petition lien on estate property, without prior court authorization, the defendant would have the burden of establishing the validity of the transfer despite the lack of a court order, such as demonstrating that a prior court order

---

[2] The issue of tracing first surfaced in the parties' closing arguments. The Trustee complained that he was not notified prior to trial that Love disputed that these checks represented property of the estate. Love had not raised this issue in the Joint Pretrial Statement. But Love pointed out that the Complaint failed to include an allegation that this money was property of the estate and so there had been no need for Love to assert its denial of this fact. While the Court sympathizes with the Trustee's predicament, it has to agree with Love. The Complaint contains no allegation that the transfers were made from property of the estate. Love's Answer included, among others, a defense that the Complaint failed to state a claim for relief.

encompassed this lien as well. Under this second interpretation of Rule 6001, the burden remains on the trustee to establish a transfer, made post-petition, from estate property, and at least the burden of going forward with a showing that it was unauthorized. If the trustee were to meet this burden, then the burden would shift to the defendant to establish the validity of the transfer.

This Court adopts the latter interpretation. It is in keeping with the weight of authority that places the burden on the trustee to establish the elements of a § 549 claim, including the element that the transfer involved property of the estate. *See, e.g., Jobin v. Youth Benefits Unlimited (In re M&L Bus. Mach. Co., Inc.)*, 164 B.R. 148, 153 (D. Colo. 1994), *aff'd* 59 F.3d 1078 (10th Cir. 1995); *Gibson v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991); *Vasquez v. Mora (In re Mora)*, 218 B.R. 71 (9th Cir. BAP 1998), *aff'd* 199 F.3d 1024 (9th Cir. 1999); *Nelson v. Kingsley (In re Kingsley),* 208 B.R. 918, 920 (8th Cir. BAP 1997). As a result, the Trustee had the burden to trace these funds in order to satisfy the "property of the estate" element and, having failed to do so, his claims to recover the value of the two checks also fail.

### B.      Who was the Initial Transferee or Party Benefitted?

The Globe payment made directly to Love does not suffer from this same failing. No one disputes that the $8,374 check came from property of the estate, and that all other elements of § 549(a) have been met as to this payment. The only issue that remains as to the Trustee's ability to avoid this payment is whether Love may assert a good faith defense under §550(b)(1). Is Love the "initial transferee" or the party "for whose benefit such transfer was made," and therefore strictly liable? Or is Love a subsequent transferee?

The Court must answer this question because, if Love is a subsequent transferee, it will prevail against the Trustee's remaining claim. The evidence established that Love accepted all three payments for value, in good faith, and without any knowledge that the payments might be avoidable in bankruptcy. Love fully performed its contracts with Mrs. Potter to provide funeral and burial services, and the headstone. While this value was given to the Debtors, and not to the trustee or the estate, the "statute emulates the pattern of other rules protecting good faith purchasers. All of the courts that have considered this question have held or implied that value to the transferor is sufficient." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 897 (7th Cir. 1988)(citations omitted). In terms of knowledge, Love did not know of the Debtors' bankruptcy filing until it was served with the Summons in this action, over one year after its receipt of Mrs. Potter's final payment. There was no suggestion by the parties that using an assignment of the insurance proceeds was a highly unusual or inherently suspicious transaction. Love commonly offers to take an assignment of insurance proceeds to spare its clients the added task of dealing with the insurance company directly. The form of Assignment used in this case is one that Love commonly uses. There was no evidence of any discussion between Mrs. Potter and Love that they should use this policy instead of the exempt policy in order to maximize her exemptions. It was Mrs. Potter who made the selection to use the Globe policy for this purpose instead of the other policies. Her decision was based on its face amount, which was close in amount to the amount she would owe Love and it would not require an

assignment of several small policies to provide for full payment. In fact, the Trustee did not dispute, and the Court finds, that if Love is a subsequent transferee, it has satisfied the good faith exception.

The Bankruptcy Code does not define the term "initial transferee." The Tenth Circuit has adopted the definition set forth by the court in *Bonded Financial*, which holds that the initial transferee is the first party to exercise dominion and control over the money or other asset. *Malloy v. Citizens Bank (In re First Sec. Mortgage Co.)*, 33 F.3d 42 (10th Cir. 1994). In the case of funds on deposit, dominion and control has been defined as "the right to put the money to one's own purposes." *Id.* at 44 (quoting *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988); *See also Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1202 (10th Cir. 2002); *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996). *Bonded Financial* and the Tenth Circuit decisions interpreting § 550 involved prepetition transfers and, in large part, they focus on the distinction between the initial transferee and a party who acts only as an intermediary or conduit. Thus, they are not directly applicable to the present case. But they contain a great deal of analysis that is instructive.

*Bonded Financial* is, in many respects, the seminal decision in this area. In this case, Ryan was a person in control of a number of companies. He had obtained a personal loan from the defendant bank to be used as working capital for one of his companies. He caused a second company, Bonded Financial, to issue its check, payable to the bank, and sent the check to the bank with a note, directing the bank to deposit the money into his personal account at this same bank. He later instructed the bank to apply those same funds from his account to the loan. When Bonded Financial filed bankruptcy, its trustee sought to recover the loan payment from the bank as a fraudulent conveyance.

The *Bonded Financial* court could have simply viewed this transaction as a payment from Bonded Financial to the bank on account of the bank loan, which payment was for Ryan's benefit. Then clearly the bank would have been the initial transferee. Instead the court viewed this as two separate transactions. The first transaction was the transfer of funds by check from Bonded to Ryan, which were deposited into Ryan's account. It held that, because Ryan had sent a note to the bank, directing it to deposit the funds in his account, the bank had merely followed his instructions and had not exercised control over the funds. Then a second transfer occurred when the bank, acting on Ryan's later instructions, withdrew the funds from the account and applied them to the indebtedness. The court held that the bank acted only as an intermediary in the first transaction and Ryan was the initial transferee. When the bank applied the funds to the loan, it was a subsequent transferee, entitled to assert the good faith exception.

In *First Security Mortgage Co.*, the debtor company's funds were deposited into an attorney's trust account. While it does not state so expressly, it appears that the attorney disbursed the funds for his own purposes. After the company filed bankruptcy, the trustee sued the bank as the initial transferee to recover the debtor's funds, claiming a fraudulent conveyance. Adopting the reasoning of *Bonded Financial,* the Tenth Circuit held that the bank was a mere conduit, not the initial transferee.

In *Ogden,* a real estate developer had engaged in a Ponzi scheme. He placed some of the investor money in an escrow account with a title company. The escrow company released funds back to two investors. The bankruptcy trustee sued these investors to recover the funds as a preferential transfer. They defended in part by claiming that the title company was the initial transferee. The Tenth Circuit found the investors to be the initial transferees and held that the title company was a mere conduit.

In *Rupp v. Markgraf*, the wife of the company's principal caused the bank to issue a cashier's check, drawn on the debtor company's account, to pay the principal's obligation. In the trustee's suit to recover this prepetition payment, the Tenth Circuit held that the bank was a mere conduit. The principal was held liable under §550(a)(1). While the principal was not the initial transferee, he was the person for whose benefit the transfer was made. The funds were never in his account, he was not the payee or the remitter of the cashiers' check, and he could not personally access the funds, but they were used to pay his debt. The Tenth Circuit deemed the Markgrafs, who were owed money by the principal, and who were the recipients of the cashier's check, to be the initial transferees.

In *Bonded Financial* and the Tenth Circuit decisions, the courts did not have to address the question of whether the debtor could be the initial transferee of a post-petition transfer. In several § 549 cases, courts have held the debtor or its principal may be the initial transferee.[3] In these § 549 cases, like the present case, the debtor or its principal converted estate property to his or her own use.

In *Ross v. John Mitchell, Inc. (In re Dietz)*, 94 B.R. 637 (9th Cir. BAP 1988), *aff'd* 914 F.2d 161 (9th Cir. 1990), the panel agreed with the bankruptcy court's finding that the debtor was the initial transferee of misappropriated estate funds. The debtor operated two businesses as a sole proprietor. The Chapter 7 trustee continued to operate one of the businesses and hired the debtor to assist him for a period of time. Unbeknownst to the trustee, the debtor moved estate funds into an unknown account and continued to operate the other business, which the trustee had not elected to continue. The debtor hired employees, who performed post-petition services, and paid them from the secret account. When the trustee discovered the defalcation, he sued to revoke the debtor's discharge and to recover the funds from the employees. The bankruptcy court found the debtor to be the initial transferee and the employees to be subsequent transferees. Two of the employees established the good faith exception. The other nine did not. On appeal, the Bankruptcy Appellate Panel upheld the court's ruling that the initial transfer was the debtor's

---

[3] One court has, without analysis, held that the initial transferee of a § 549 transfer cannot be the debtor, essentially reading into § 549 that the transfer must be a "transfer of property of the estate *from the debtor*." *See, e.g., Keller v. Hoyle, Morris & Kerr (In re Blinder, Robinson & Co., Inc.),* 199 B.R. 976, 983 (D. Colo. 1996). It likely could have reached the same conclusion, however, by finding Mrs. Blinder, as the alter ego of the debtor, to be the initial transferee, but then concluded that her attorneys, as subsequent transferees, could not fit within the good faith exception.

deposit of the funds into the secret estate account and held the debtor was the initial transferee of this transfer, despite the fact that the money remained property of the estate when he put it into the secret account. His acts of dominion and control over these funds made him the initial transferee.

In *Poonja v. Charles Schwab & Co., Inc. (In re Dominion Corp.),* 199 B.R. 410 (9th Cir. BAP 1996), the principal of the Chapter 11 debtor company opened a brokerage account in the company's name. Post-petition, the principal made personal purchases of luxury goods and services, using a credit card issued by the brokerage, secured by funds and securities in the account. Following conversion of the case, the trustee discovered the defalcation and sued to recover the value of the account. He named the brokerage company, the credit card bank, and the merchants who had provided goods and services. The panel applied the *Bonded Financial* definition of a "transferee," as one who exercises dominion and control over the asset. While making no specific mention of the status of the merchants on appeal, the court concluded that the principal was the initial transferee, not the brokerage.

In *Still v. American National Bank & Trust Co. (In re Jorges Carpet Mills, Inc.)*, 50 B.R. 84 (Bankr. E.D. Tenn. 1985), the principal of the debtor withdrew funds from the debtor company post-petition by means of a cashier's check drawn on the company's account. He gave it to his bank to repay his personal loan. The bank had no knowledge that the funds came from the company because the cashier's check showed the principal as its remitter. The court held that the principal, not the bank, was the initial transferee. *See also Brown v. Harris (In re Auxano, Inc.)*, 96 B.R. 957 (Bankr. W.D. Mo. 1989).

The Trustee argued forcefully in closing that, if the Court were to follow the lead of these other § 549 cases, holding the debtor to be the initial transferee, it would render § 550(a)(1) meaningless. Certainly, this would be true in the context of a prepetition transfer that a trustee seeks to avoid as a fraudulent conveyance action under § 544 or § 548, or as a preference under § 547. In these prepetition transfer actions, if the debtor's own actions made him the initial transferee, it would render § 550(a)(1) meaningless. But should courts interpret "initial transferee" in the context of a § 549 claim more expansively? Some commentators have criticized the courts for making their interpretations of § 550(a)(1) fit a certain result, without remaining faithful to the statutory language. *See* Larry Chek and Vernon O. Teofan, *"The Identity and Liability of the Entity For Whose Benefit a Transfer is Made Under Section 550(a): An Alternative to the Rorschach Test,"* 4 J. BANKR. L. & PRAC. 145 (1995). Is a court guilty of a results-oriented approach if it holds the person who converts estate property to be the initial transferee?

Recognizing the difference between a transferee and an intermediary, developed in *Bonded Financial,* and adopted by many circuits, was itself a judicially-created exception to the literal language of § 550. In doing so, the court cautioned against the practice of many bankruptcy courts in relying on "equity" to relieve a transferee from a literal construction that they perceived as inequitable. But in acknowledging that the definition of a "transferee" was susceptible to varying interpretations, it acknowledged that a court could remain faithful to the

language of the statute and still embrace an interpretation that "employed considerations of policy to *define* 'transferee' under § 550(a)(1)." *Bonded Fin. Servs. v. European Am. Bank,* 838 F.2d 890, 895 (7th Cir. 1988). Yet it cautioned further that "[d]oubts about this use of equity do not imply that courts should take 'transferee' for all it could be worth rather than for what a sensible policy implies it is worth." *Id.*

Many years before this judicial exception arose, in *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), the Supreme Court confronted a case in which the defendant bank had been sued as a transferee for honoring prepetition checks post-petition. The court did not articulate the conduit distinction, but instead ruled that the language of § 70d, § 550's predecessor under the former Bankruptcy Act, was not to be strictly applied when to do so would yield an inequitable result. "Yet we do not read these statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Id.,* 385 U.S. at 103.

The Court does not suggest that the result in this case should be dictated by notions of justice and equity alone, without consideration of the actual language of the statute. But the principles laid out by the Supreme Court and the circuits encourage this Court to adopt an interpretation of "transferee" in the context of a § 549 claim that reflects sound policy. The primary focus of all of these cases is on identifying the first party who has, or could have, exercised dominion and control over the asset and holding that party to be the initial transferee.

In the present case, Mrs. Potter was the first party to exercise dominion and control over the Globe policy and its proceeds. As in *Bonded Financial*, the transfer at issue was actually a two-step transaction. When the Debtors filed bankruptcy, they owned the Globe policy, which was a contract that gave them the right to payment on the happening of a condition subsequent. This contract became property of the estate. After the bankruptcy filing, Globe's payment obligation matured. Mrs. Potter executed an assignment of a portion of this contract right. However unwittingly, by executing the Assignment, she usurped this asset from the bankruptcy estate. Globe later issued two checks in accordance with her instructions, one directly to Love for Mrs. Potter's benefit and one directly to Mrs. Potter, which she deposited into the prepetition checking account. The act of executing the Assignment was the first transfer. The checks made payable to Love and Mrs. Potter were subsequent transfers. "Transfer" is defined by §101(54), as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property . . . ." The execution of the Assignment fits within this broad definition of a "transfer." Thus, there is a basis for finding Mrs. Potter to be the initial transferee when she executed the Assignment.

Finding Mrs. Potter to be the initial transferee also comports with sound policy. Mrs. Potter, however unintentionally, exercised dominion and control over the Globe policy. She caused Globe to transmit the funds to Love and to herself. There is no appreciable difference between Mrs. Potter telling Globe to pay Love and her telling Globe to pay herself as far as the estate is concerned.

By way of contrast, Love had no way to protect itself from this situation. It provided goods and services, without any reason to suspect the voidability of the transaction. Holding Love liable for this transfer would in essence impose a duty on every merchant to conduct a bankruptcy search on its customer before parting with its goods or services. In the case of a preferential claim, the transferee can attempt to assert defenses to the action, such as a contemporaneous exchange for new value or that the transaction occurred in the ordinary course of business. Faced with a fraudulent conveyance claim, a transferee has the opportunity to prove that it gave reasonably equivalent value. In the case of a party who contracts with a trustee or debtor-in-possession to provide something of value post-petition, that party ordinarily has the ability to assert an administrative expense priority claim for payment. But in the context of a trustee or debtor who converts estate property to his own use, there is no corresponding benefit to the estate that will allow the assertion of the priority claim. In our context, no protection is available unless the transferee is held not to be the initial transferee. For these reasons, the Court holds that, in the context of a § 549 claim in which a party has wrongfully converted estate property to his own use, he is the initial transferee. Thus, Mrs. Potter was the initial transferee when she executed the Assignment and Love was a subsequent transferee.

## III.    Conclusion

For the foregoing reasons, the Trustee's claims against Defendant Love Funeral Home fail. Judgment shall enter in favor of the Defendant and against the Trustee, dismissing the Complaint.

DATED this 26th day of March, 2008.

BY THE COURT:

Elizabeth E. Brown
United States Bankruptcy Judge